**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**Wheeling**

**ROVER PIPELINE LLC,**

    Plaintiff,

  v.        ,   **CIVIL ACTION NO. 5:18-CV-68 (LEAD)**
                Judge Bailey

**ROVER TRACT NO(S). WV-MA-ML-056.500-ROW**
**AND WV-MA-ML-056.500-ATWS, ET AL.,**

    Defendants.

and

**ROVER PIPELINE LLC,**

    Plaintiff,

  v.          **CIVIL ACTION NO. 5:18-CV-72**

**ROVER TRACT NO(S). WV-MA-ML-057.000-ROW-T,**
**WV-MA-ML-057.000-ATWS, AND WV-MA-ML-057.000-ATWS-2, ET AL.,**

    Defendants.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO EXCLUDE AND GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

Pending before this Court are two motions–Plaintiff's Motion to Exclude Expert Witness Testimony of Lee C. Paull, IV [Doc. 84] and Plaintiff's Motion for Summary Judgment as to Just Compensation Owed to Defendants [Doc. 85]. Defendants filed an Omnibus Response to Rover Pipeline's Motion for Summary Judgment and Motion to Exclude Expert Testimony of Lee Paull, IV [Doc. 86]. Thereafter, plaintiff filed a Reply in Support of Plaintiff's

1

Motion to Exclude Expert Witness Testimony of Lee C. Paull, IV [Doc. 88], and a Reply in Support of Plaintiff's Motion for Summary Judgment as to Just Compensation Owed to Defendants [Doc. 89].  Accordingly, these matters are ripe for adjudication, and given the overlap in argument between the motions, this Court will address them in one order.  For the reasons contained herein, the Motion in Limine will be denied, and the Motion for Summary Judgment will be granted in part and denied in part.

## BACKGROUND

On February 3, 2017, Rover filed its Verified Complaint for Condemnation [Civil Action No. 5:17-CV-15, Doc. 1] seeking an order of condemnation for permanent pipeline, temporary workspace, surface site, permanent and temporary road access, and/or other rights-of-way and easements ("easements"), which it subsequently amended on February 23, 2017 [Civil Action No. 5:17-CV-15, Doc. 46].  On February 7, 2017, Rover filed its Motion for Partial Summary Judgment and Immediate Access and Possession of Easements to be Condemned [Civil Action No. 5:17-CV-15, Doc. 33] seeking immediate access to and possession of the easements described in its complaint.  On February 23, 2017, Rover filed its Supplement to Motion for Partial Summary Judgment to incorporate the easements added in its February 23, 2017, Amended Verified Complaint in Condemnation [Civil Action No. 5:17-CV-15, Doc. 61].  On March 3, 2017, this Court entered its Order Granting Rover Pipeline LLC's Motion for Partial Summary Judgment and Immediate Access and Possession of Temporary Easements to be Condemned [Civil Action No. 5:17-CV-15, Doc. 208] confirming Rover's right to condemn and permitting Rover to immediately access and possess the easements while the issue of just compensation was determined.

Pursuant to this Court's March 3, 2017, Order, Rover deposited $7,000.00 for the easements with the court. *See* [Civil Action No. 5:17-CV-15, Doc. 209]. The March 3, 2017, Order provided that the remaining defendants were "entitled to draw from the funds deposited by [Rover] with the Clerk of the Court [their] ownership share of the amount of estimated just compensation deposited by [Rover]." *See* [Civil Action No. 5:17-CV-15, Doc. 208]. The March 3, 2017, Order further provided that the defendants "shall be entitled to interest calculated pursuant to 28 U.S.C. § 1961 from and after the date of entry of this Order on the difference between the principal amount deposited with the Court by [Rover] and the amount of just compensation determined by the Court, if such determination of just compensation to be paid exceeds the amount deposited by [Rover]." [Id.].

On March 22, 2018, this Court entered its Order Directing Plaintiff to File Separate Amended Complaints for Unresolved Tracts, Economic Units or Ownership. *See* [Civil Action No. 5:17-CV-15, Doc. 494]. ON May 1, 2018, Rover filed its Verified Complaint for Condemnation of Easement(s) Known as Tract No(s) WV-MA-ML-056.500-ROW and WV-MA-ML-056.500-ATWS [Civil Action No. 5:18-CV-68, Doc. 1], which it subsequently amended on March 29, 2019 [Doc. 31]. Also, on May 1, 2018, Rover filed its Verified Complaint for Condemnation of Easement(s) Known as Tract No(s) WV-MA-ML-057.000-ROW-T [Civil Action No. 5:18-CV-72, Doc. 1], which it subsequently amended on June 11, 2018 [Doc. 8], and which it amended for a second time on March 29, 2019 [Doc. 60].

On June 11, 2018, and March 30, 2019, Rover filed its Motions for Partial Summary Judgment and Immediate Access and Possession in the 2018 civil actions [Civil Action 5:18-CV-68, Doc. 33, and Civil Action No. 5:18-CV-72, Docs. 9 & 62] seeking immediate

access to and possession of the easements.  On August 13, 2018, and April 23, 2019, this Court entered its Orders Granting Rover's Motion for Partial Summary Judgment and Immediate Access and Possession in Civil Action Nos. 5:18-CV-68 [Doc. 39] and 5:18-CV-72 [Docs. 48 & 69] (collectively the "Orders Granting Possession").  This Court's Orders Granting Possession confirmed Rover's right to condemn and permitted Rover to immediately access and possess the easements while the issue of just compensation was determined. Pursuant to the Court's Orders Granting Possession, Rover deposition an additional $5,400.00 [Civil Action No. 5:18-CV-68, Doc. 40], $3,300.00 [Civil Action No. 5:18-CV-72, Doc. 50], and $7,180.00 [Civil Action No. 5:18-CV-72, Doc. 70].  The Orders Granting Possession provided that the Remaining Defendants were "entitled to draw from the funds deposited by [Rover] with the Clerk of the Court [their] ownership share of the amount of estimated just compensation deposited by [Rover]." *See* [Civil Action No. 5:18-CV-68, Doc. 39; and Civil Action No. 5:18-CV-72, Docs. 48 & 69].  The Orders Granting Possession further provided that the defendants "shall be entitled to interest calculated pursuant to 28 U.S.C. § 1961 from and after the date of entry of this Order on the difference between the principal amount deposited with the Court by [Rover] and the amount of just compensation determined by the Court, if such determination of just compensation to be paid exceeds the amount deposited by [Rover]."  [Id.].

On August 18, 2020, this Court consolidated Civil Action Nos. 5:18-CV-68 and 5:18-CV-72 and designated the former as the lead case.

The total amount that Rover deposited with the Court in the consolidated actions, $22,880.00, represented an aggregate estimate of just compensation due to all owners. The

4

aggregate estimate was based on appraisal data and/or offers made to the surface owners and did not include any amount specifically attributable to the interests of owners besides the surface owners, such as owners of mineral interests, easement interests, or lien interests. Although owners besides the surface owners were named as defendants pursuant to Federal Rule of Civil Procedure 71.1(c)(3), such owners had not alleged any compensable interference with their interests in the subject property by the taking; accordingly, none of the estimated deposit amount was specifically attributable to the interests of owners besides the surface owners. The remaining defendants are comprised of those owners with an interest in the surface of the subject property, Kerry Foster, Cindy Foster, and Ryne Foster ("the Fosters" or "defendants"), an owner with an interest in the coal in-place underlying the subject property ("coal owner"), those owners other than surface owners or the coal owner with an interest in the subject property, such as mineral interests, easement interests, or lien interests ("other interest owners"), and unknown owners. Pursuant to Federal Rule of Civil Procedure 71.1(c)(3), Rover named the unknown owners as defendants out of an abundance of caution. The identities, interests, and whereabouts of the unknown owners remain unknown.

The easements Rover is seeking to condemn and the property upon which the easements are located are more specifically described in Rover's Amended Verified Complaints for Condemnation of Easements and Exhibits A thereto [Civil Action No. 5:18-CV-68, Docs. 31 & 31-1; and Civil Action No. 5:18-CV-72, Docs. 60 & 60-1]. As Rover has already taken possession of the easements, the only remaining issue before this Court is that of just compensation to the remaining defendants for the subject takings. As indicated by the subject pleadings, a dispute amongst the parties exists concerning the amount of just

5

compensation to be awarded. The competing valuations asserted by the parties stem from conflicting expert opinions concerning the same and, in turn, the propriety of summary judgment hinges on whether defendants' expert evidence is admissible before this Court.

## STANDARDS OF REVIEW

### I.     Admissibility of Expert Evidence

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

Once qualified, an expert's testimony is admissible under Rule 702 if (1) it concerns reliable "scientific, technical, or other specialized knowledge" that (2) will "aid the jury or other trier of fact to understand or resolve a fact at issue." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 260 (4th Cir. 1999) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993)). The first prong requires that this Court examine whether the reasoning or methodology underlying the expert's proffered opinion is reliable, and the second prong requires this Court to evaluate whether the proffered testimony is relevant to the issues in controversy. *Daubert*, 509 U.S. at 590–92, 597.

6

In assessing whether an expert's opinion is sufficiently reliable and relevant, this Court acts as a gatekeeper and conducts a flexible inquiry focusing on the principles and methodology employed by the expert rather than the conclusions reached. *Id.* at 594–95. As the gatekeeper, the trial court must ensure that speculative and unreliable opinions do not reach the jury. *Id.* at 589, n.7. The proponent of expert testimony "must come forward with evidence from which the court can determine that the proffered testimony is properly admissible." *Maryland Cas. Co. v. Therm-O-Disc, Inc.*, 137 F.3d 780, 783 (4th Cir. 1998); *see also Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) ("The proponent of the testimony must establish its admissibility by a preponderance of proof.") (citing *Daubert*, 509 U.S. at 592 n.10).

Declining to establish a definitive checklist to assess "reliability," the *Daubert* Court nevertheless articulated four, non-exhaustive factors to consider: (1) whether a theory or technique "can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) "the known or potential rate of error"; and (4) "general acceptance." *Id.* at 593–94. The overarching objective of the gatekeeping requirement is to ensure that expert witnesses employ the "same level of intellectual rigor that characterizes the practice of an expert in the relevant field" in the courtroom. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999).

To be considered reliable, an expert must employ a methodology that is "recognized in the scientific community for rendering an opinion on the subject under consideration." *Oglesby v. General Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999) ("A reliable expert opinion must be based on scientific, technical or other specialized knowledge and not on

7

belief or speculation, and inferences must be derived using scientific or other valid methods."). Expert opinions that are "bare conclusions without reliable support" are subject to exclusion. ***Stolting v. Jolly Roger Amusement Park, Inc.***, 37 F.App'x 80, 83 (4th Cir. 2002); *see* ***McEwen v. Baltimore Washington Med. Ctr. Inc.***, 404 F.App'x 789, 791–92 (4th Cir. 2010) ("Nothing in either ***Daubert*** or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert.") (quoting ***Gen. Elec. Co. v. Joiner***, 522 U.S. 136, 146 (1997)).

## II.     Just Compensation

Just compensation is a reimbursement to the landowner for the property interest taken. ***United States v. Va. Elec. & Power Co.***, 365 U.S. 624, 633 (1961).  It is the amount of money necessary to put a landowner in as good a pecuniary position, but no better, as if his property had not been taken.  ***United States v. 69.1 Acres of Land***, 942 F.2d 290, 292 (4th Cir. 1991).  The landowner has the burden of proving the value of the land taken.  ***Id.***

Just compensation consists of: (1) the fair market value of the property taken; and (2) the damage, if any, to the landowner's remaining property as a result of the taking.  *See* ***United States v. 97.17 Acres of Land***, 582 F.2d 878, 881 (4th Cir. 1978).  Just compensation is "measured by 'the market value of the property at the time of the taking.'" ***United States v. 100.01 Acres of Land***, 102 F.App'x 295, 297 (4th Cir. 2004) (quoting ***United States v. 50 Acres of Land***, 469 U.S. 24, 29 (1984)).  The measure of damages to the landowner's remaining property is the difference between the fair market value of the property immediately before the taking and its fair market value immediately after the taking. ***United States v. Banisadr Bldg. Joint Venture***, 65 F.3d 374, 378 (4th Cir. 1995).

Where the property interest condemned is only a partial taking of the property, "just compensation is determined by the diminution in market value as measured by the difference between the fair market value of the land before condemnation and the fair market value after." ***Hardy Storage Co., LLC v. Property Interests Necessary to Conduct Gas Storage Operations in the Oriskany Sandstone Subterranean Geological Formation***, 2009 WL 689054, at *5 (N.D. W.Va. Mar. 9, 2009) (Keely, J.); *see also **Columbia Gas Transmission, LLC v. 76 Acres***, 701 F.App'x 221, 228 (4th Cir. 2017) ("[T]he measure of damages for a partial taking is the fair market value of the parcel actually taken plus the severance damages; severance damages are defined as the difference in market value of the residue before and after taking.") (internal quotation marks omitted).

When a permanent easement is condemned, "the Court must consider not only the market value of the property and the amount of land taken, but also the percentage of the original bundle of ownership rights that the owner retains on the encumbered land." ***Portland Natural Gas Transmission Sys. v. 19.2 Acres of Land***, 195 F.Supp.2d 314, 322 (D. Mass. 2002). When a temporary easement is condemned, compensation is measured by "the rental value of the property for the period of occupation," which "commonly measured by the rental value of the property as a whole." ***Id.*** at 322–23.

## III.   Summary Judgment

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The party seeking summary

9

judgment bears the initial burden of showing the absence of any genuine issues of material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If the moving party meets this burden, the nonmoving party "may not rest upon the mere allegations or denials of its pleading, but must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.* "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  *Id.* at 250.

In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Additionally, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Id.* at 586.  That is, once the movant has met its burden to show absence of material fact, the party opposing summary judgment must then come forward with affidavits or other evidence demonstrating there is indeed a genuine issue for trial.  Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 323–25; *Anderson*, 477 U.S. at 248.  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).  Although all justifiable inferences are to be drawn in favor of the non-movant, the non-moving party "cannot create a genuine issue of material fact through mere speculation of the building of one inference upon another." *Beale v. Hardy*, 769

10

F.2d 213, 214 (4th Cir. 1985).  Further, "the plain language of Rule 56(c) mandates the entry

of summary judgment . . . against a party who fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial."  **Celotex Corp.**, 477 U.S. at 322.

## DISCUSSION

Much of plaintiff's argument in its Motion for Summary Judgment hinges on the

admissibility of testimony offered by the Fosters' expert witness–Lee Paull, IV.  This testimony

is the subject of plaintiff's Motion in Limine and, accordingly, this Court will address the merits

of that motion as a threshold matter before turning to the Motion for Summary Judgment.

## I.    Plaintiff's Motion in Limine

In the pending Motion in Limine, plaintiff asserts that Paull is not qualified to provide

expert testimony in this case.  [Doc. 84-1 at 8].  As identified by plaintiff, Paull is a licensed

real estate agent and broker in West Virginia and Ohio.  [Doc. 84-5 at 13:4–9].  Plaintiff

contends that despite his experience as a real estate agent and broker, Paull is not qualified

to render an expert opinion regarding the market value of the Fosters' property because he

is not a licensed appraiser and is unfamiliar with valuation in condemnation proceedings.

[Doc. 84-1 at 8].

Further, plaintiff contends that despite Paull's assertion that he has functioned as a

"developer," Paull admits that he is "not in th[e] business" of preparing raw land for residential

real estate development; therefore, plaintiff asserts Paull is incapable of estimating the costs

associated with developing the Foster's property into a residential subdivision.  [Id. at 9].

11

Plaintiff also argues that Paull is not qualified to comment upon the safety of its pipeline because Paull admits he does not have specialized experience or knowledge regarding pipelines or pipeline safety.  [Id.].

Plaintiff goes on to assert that even if Paull was qualified to render an opinion in the case *sub judice*, his testimony must be excluded because it is wholly speculative, unreliable, unsubstantiated, and lacks a sufficient methodology.  [Id.].  More specifically, plaintiff alleges that Paull's opinions concerning future development of the Fosters' property into a residential subdivision is purely speculative as no steps have been taken concerning the proposed development.  [Id. at 9–10].  Additionally, plaintiff's claim that Paull's opinions concerning the valuation of the property are unsubstantiated and untestable because he fails to identify with sufficient particularity the sales upon which he relied to reach his valuation calculations.  [Id. at 12–13].

Moreover, plaintiff asserts that Paull's opinions concerning buyer fear, pipeline safety, and pipeline impacts on property valuations are also inadmissible because they are not based on market data and instead rely on an impermissible "lot method" valuation.  [Id. at 13–15].  Plaintiff then contends that Paull's opinions are otherwise irrelevant and unhelpful because they will not assist the trier of fact in determining the value of the property at the time of the subject taking, and that they will subject plaintiff to unfair prejudice.  [Id. at 16–23].

This Court rejects plaintiff's arguments in its Motion in Limine for the reasons asserted in defendants' Omnibus Response.  First, this Court notes that Paull is qualified to proffer expert testimony concerning the fair and reasonable market value of the portion of the Fosters' properties remaining after the subject taking because he is an expert in selling property in the

Ohio Valley.  As identified by defendants, Paull testified that he performed a comparative market analysis on the subject property and computed the sales value of the property. [Doc. 84-5 at 19:17–20:12].  Further, Paull explained that the purpose of the comparative market analysis is "to get an idea of what to list a property for," to "put the property on the market." [Id. at 20:13–20:18].  Paull also opined that plaintiff significantly devalued the subject property by running a gas line through the majority of the lots.  See [Doc. 84-2 at 2].  Paull continued to explain that "between five and nine lots are undevelopable, and the other lots are compromised by their close proximity to this gas line," rendering the development of the property non-feasible.  [Id.].

It is entirely within Paull's scope of expertise to testify in front of a jury concerning what he believes the subject property to be worth based on his personal knowledge of Ohio Valley real estate.  This includes testimony concerning Paull's perceived valuation of the property if it were to be developed as planned in the Breckenridge Plat showing a proposed twenty-two lot subdivision.  Furthermore, Paull is entitled to testified concerning his opinions on whether the existence of the pipeline will devalue the subject real estate as it exists currently.

It is abundantly clear that plaintiff contests and disagrees with Paull's opinions concerning the property and whether defendants actually had a cognizable plan to develop the property prior to the subject taking.  However, the proper course is not to preclude testimony to this effect through a motion in limine.  Rather, Paull will be permitted to testify before the jury and will be subject to cross-examination concerning his opinions.  Additionally, the jury will hear testimony from plaintiff's expert, who will in all likelihood present a starkly differing account concerning the property's valuation.  It is within the purview of the jury to hear the

evidence presented and weigh its credibility and methodology used to ascertain value. The jury can then consider the conflicting accounts and determine whose value is more accurate based on a consideration of the competing testimony, including the testimony concerning the purported plan for property development, viewed as a whole. Accordingly, this Court will deny the Motion in Limine.

## II.    Plaintiff's Motion for Summary Judgment

### A.    There are genuine issues of material fact with respect to the Fosters.

In support of its Motion for Summary Judgment, plaintiff first asserts that there is no genuine issue of material fact as to the valuation of just compensation because Paull's testimony is inadmissible. [Doc. 81-1 at 12]. This Court rejects that argument for the reasons contained in the discussion on plaintiff's Motion in Limine.

Next, plaintiff contends that there is no genuine issue of material fact concerning the valuation of just compensation because the Fosters' landowner testimony is also inadmissible as irrelevant and not genuine. [Id. at 12]. According to plaintiff, the Fosters failed to provide any testimony from their own perception regarding compensation, but "instead parroted the opinions of their proffered expert or offer purely speculative statements regarding potential 'lost' developments." [Doc. 85-1 at 13]. This Court disagrees.

The common law presumes that a property owner is "competent to testify on the value of his own property." *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 542 (4th Cir. 2013). Here, Kerry Foster testified that he personally learned that his neighbor sold a half-acre property adjacent to his own for approximately $70,000.00. [Doc. 84-6 at 33:18–34:3]. Kerry Foster further expounded on the differences between his property and his

14

neighbors stating that his property has a better view of the Ohio River Valley. [Id. at 34:4–34:10]. Further, Kerry Foster opined that based on the money his neighbor had received, if he were to divide up his property and sell lots, he would have "88 half-acre lots at $70,000.00." [Id. at 34:14–34:16]. This seems to be a stretch. However, it is not for this Court to decide this contested issue of material fact. Rather, Kerry Foster will be permitted to testify as to his own perception of the valuation of his own property, subject to cross-examination, and the jury can consider the credibility of his proffered testimony concerning the same.

### B.   There are no genuine issues of material fact with respect to the other defendants.

Plaintiff also asserts it is entitled to summary judgment on its claims concerning the other defendants, which include the coal owner and the other interested owners as previously defined. See [Doc. 85-1 at 19]. This Court agrees. In this instance, the other defendants have failed to file an answer or otherwise defend this matter. Moreover, the other defendants have failed to designate an expert witness to testify regarding the value of the easements and have offered no evidence of the amount of just compensation due to them. As noted by plaintiff, all discovery deadlines have passed in this matter, including the date for the other defendants to disclose an expert witness. Therefore, the other defendants have no evidence with which to meet their burden of proof, and summary judgment must be granted to plaintiff insofar as its claims concerning the other defendants.

With respect to the amount of just compensation owed to the other defendants, this Court will award nominal damages to the other defendants in light of the other defendants'

failure to contest the condemnation or offer a valuation.  As to the other interest owners' interests, they have not filed any answers or otherwise defended this matter, nor have they offered any expert disclosures or other admissible evidence in this matter.  Accordingly, this Court will award the other interest owners nominal damages.

Further, as to the coal owner's interests affected by the easements, the only offered evidence before this Court indicates that the coal reserves underlying the subject property have no development potential and no appreciable value.  *See* [Doc. 85-10].  Therefore, the total measure of just compensation to be awarded to the coal owner is nominal only.[1]

## CONCLUSION

For the reasons contained herein, Plaintiff's Motion to Exclude Expert Witness Testimony of Lee C. Paull, IV [**Doc. 84**] is **DENIED**, and Plaintiff's Motion for Summary Judgment as to Just Compensation Owed to Defendants [**Doc. 85**] is **GRANTED IN PART AND DENIED IN PART**.

Based on the rulings contained herein, the Clerk is directed to **DISMISS** all remaining defendants (other than the Fosters) and unknown owners **WITH PREJUDICE**.

It is so **ORDERED**.

The Clerk is further directed to provide copies of this Memorandum Opinion and Order to all counsel of record herein.

---

[1]Given the ongoing litigation concerning the Fosters' alleged damages, this Court will issue a final order at the conclusion of this suit articulating all specific damages awarded to each defendant upon the final outcome of this suit.

**DATED:** August **5**, 2021.

JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE

17